UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARON WILSON and LILLIE JONES, on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-CV-0787-B |
| ETECH GLOBAL SERVICES LLC, ETECH TEXAS LLC, ETECH, INC., DALLAS CENTER, LLC, and MATTHEW F. ROCCO, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Notice to Potential Plaintiffs and Conditional Certification. Doc. 10. For the following reasons, the Court **GRANTS** the Motion and directs the parties to meet and confer as to a proposed notice and consent form.

## I.

## BACKGROUND[1]

This is a Fair Labor Standards Act (FLSA) case brought by Sharon Wilson and Lillie Jones, on behalf of themselves and all other similarly situated employees (collectively "Plaintiffs") against Etech Global Services LLC; Etech Texas LLC; Etech, Inc.; Dallas Center, LLC; and Matthew F. Rocco (collectively "Defendants"). Plaintiffs bring suit seeking unpaid wages resulting from

---

[1] The Court draws its factual account from the allegations contained in the Original Petition and from the parties' briefing on the Motion for Conditional Certification. Contested facts will be noted as such.

Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA's overtime pay requirements. Doc. 4-2, Pls.' Original Pet., ¶¶ 22–24.

As part of their suit to recover unpaid wages, Plaintiffs seek conditional certification as a class of customer service agents (hereinafter "Chat Agents"), employed by Defendants, who were allegedly paid in violation of the FLSA. Doc. 10, Pls.' Mot. Cond. Cert., 2, 12. Plaintiffs worked for Defendants as Chat Agents on Defendants' Verizon account. Doc. 4-2, Pls.' Original Pet., ¶¶ 12–16. Defendants track Chat Agents' compensable work hours through a program called Nuance/TouchCommerce (hereinafter the "time-keeping system"). Doc. 30, Defs.' Resp., 7. This time-keeping system tracks the hours when Chat Agents are communicating with customers or are waiting to be connected with a customer. Doc. 31-1, Defs.' App., ¶¶ 4, 7–10. All other compensable hours are tracked through an "exception-time" policy that includes hours when Chat Agents are in training, meetings, counseling sessions, and time when their computers are not functioning. Doc. 31-1, Defs.' App., ¶¶ 11–17. To track exception-time, Chat Agents would use dry-erase boards to list how many hours of exception time they worked for on a given day; however, the dry-erase boards would be recycled and erased every 24 hours.[2] Doc. 31-1, Defs.' App., ¶ 14; Doc. 31-5, Defs.' App., 139 (Wilson Depo. 90–93). Exception-time hours are only granted after they are approved and signed by supervisors. Doc. 10-6, Pls.' App., ¶ 11.

Defendants paid Plaintiffs an hourly rate; however, Plaintiffs allege that Defendants failed to pay Plaintiffs any overtime pay for hours worked over 40 hours in a work week. Doc. 10, Pls.' Mot.

---

[2] Chat Agents use the dry-erase boards because they are not allowed to bring any other recording devices, such as paper and pen, to their desks to record their hours due to Verizon's security protocol. Doc. 31-1, Defs.' App., ¶ 14; Doc. 31-5, Defs.' App., 135 (Wilson Depo. 50–53). Later, Wilson states that the company changed the policy to have employees come to the supervisor's desk to record exception-time. Doc. 31-5, Defs.' App., 152 (Wilson Depo. 182–85).

Cond. Cert., 2. Specifically, Plaintiffs argue that Defendants failed to pay overtime due to the use of the allegedly unlawful time-keeping system in conjuncture with the exception-time policy, which resulted in Defendants' failure to accurately record all of a Chat Agent's compensatory time. *Id.* In addition to not accurately recording the time, Plaintiffs claim that the allegedly faulty system was exacerbated by managers who were instructed to exclude and limit exception-time hours from Chat Agents' paychecks. *Id.* at 4–5.

Plaintiffs assert that the Court should grant their Motion because they are similarly situated for FLSA purposes and estimate that there are 35–40 Chat Agents who worked on the Verizon account at 8700 Stemmons Fwy., 2nd Floor, Dallas, Texas 75247 (hereinafter the "Dallas Center"). *Id.* at 3. Defendants argue that conditional certification is not warranted in part because Plaintiffs have not pointed to a company-wide decision, policy, or plan to deny Chat Agents' payment for their overtime hours. Doc. 30, Defs.' Resp., 21. Instead, Defendants assert that the claims are based on purely personal circumstances due to Wilson's purposeful test of the accuracy of the time-keeping system during a one-week period when she worked overtime, rogue managers, and general human error. *Id.* at 21–27.

Plaintiffs filed their Original Petition in state court on January 16, 2018. Since then, Defendants removed the action to this court and two opt-in plaintiffs have consented to join Wilson and Jones's suit: Taurean Persaud and Kamesha McFail. Doc. 10-1, Notice of Consent, 3 (Persaud Consent); Doc. 34, Notice of Consent (McFail Consent); Doc. 35, Pls.' Reply, 7–8. Like Plaintiffs, Persaud and McFail also worked as Chat Agents at the Dallas Center. Doc. 10-5, Pls.' App., ¶ 2. On February 1, 2019, Plaintiffs moved to conditionally certify their class under the FLSA. Doc. 10. On April 29, 2019, Defendants filed their joint Response in opposition to Plaintiffs' Motion for

Conditional Certification. Doc. 30. On May 16, 2019, Plaintiffs filed their joint Reply. Doc. 35. After the close of the briefing, Defendants filed an unopposed Motion to file a Sur-Reply, which the Court granted. Doc. 39. Therefore, Plaintiffs' Motion is ripe for this Court's review.

## II.

## LEGAL STANDARD

Section 216(b) of the FLSA "authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court." *Valcho v. Dall. Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008). When a plaintiff seeks to bring a collective action, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, but the FLSA does not define "similarly situated." And the Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 n.1 (5th Cir. 2010). But district courts in the Northern District of Texas have adopted the two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), which consists of a notice stage and a decertification stage. *See, e.g.*, *Ecoquij-Tzep v. Hawaiian Grill*, 2017 WL 2672328, at *2 (N.D. Tex. June 21, 2017).

Under the *Lusardi* approach, the first step—the notice stage—requires a preliminary determination, usually based only on the pleadings and submitted affidavits, of whether potential class members are similarly situated to the named plaintiff. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). If they are similarly situated, then the court can conditionally certify

the action and authorize notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. After discovery is largely complete, the defendant may move for decertification, at which point the court proceeds to the second step—the decertification stage—and considers again whether the plaintiffs are similarly situated. *Id.* If the court finds that the plaintiffs who opted in are not similarly situated with the named plaintiff, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the original named plaintiff proceeds to trial on her individual claims. *Id.* at 1213–14.

At the notice stage, a court usually has minimal evidence, so "the determination is made using a fairly lenient standard and typically results in conditional certification of a representative class." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012). Courts generally "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. A factual basis, however, must exist, and a plaintiff must show some "identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Jones*, 281 F.R.D. at 287. In conducting its analysis, the court has "a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Valcho*, 574 F. Supp. 2d at 622.

Courts do not often engage in the second step—the decertification process—until after "discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. But there are circumstances in which courts will skip the first, lenient analysis. For example, if parties have already conducted discovery on the certification issue, courts have less cause for leniency during the "notice" phase and may choose to apply a more stringent

standard. *Valcho*, 574 F. Supp. 2d at 622; *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify [the] matter.").

## III.

## ANALYSIS

*A.     Conditional Certification Standard*

Before deciding whether the Chat Agents are similarly situated, the Court first must decide whether to skip the lenient standard and apply the stringent standard because the parties have completed some amount of discovery. *See Mooney*, 54 F.3d at 1214. The Court finds that the lenient standard is appropriate in this case because application of the lenient standard is not disputed by Defendants. *See* Doc. 30, Defs.' Resp., 5–6 (acknowledging that a plaintiff's burden for conditional certification is "admittedly light"). Further, this "matter is [not] ready for trial" because discovery has been minimal and the case "is [not] largely complete." *Mooney*, 54 F.3d at 1214. Therefore, the Court applies the lenient standard.

*B.     Whether the Plaintiffs Are Similarly Situated*

The question then becomes whether the Chat Agents are sufficiently similarly situated for FLSA purposes to warrant conditional certification. At the first stage in the *Lusardi* analysis, courts will conditionally certify a class if the plaintiff has made "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. To make this determination, the Court will consider whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to

the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Jones*, 281 F.R.D. at 287; *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 650 (S.D. Tex. 2010).

To begin, the Court quickly resolves the first and third factor because they are clearly shown by Plaintiffs and are not significantly disputed. Regarding the first factor, a court considers whether a cognizable FLSA claim has been stated and whether there are other existing or former employees who performed the same tasks and whom the employer allegedly treated in the same manner. *Tolentino*, 716 F. Supp. 2d at 649. Here, Plaintiffs have made substantial allegations regarding the existence of aggrieved Chat Agents and the Court finds that Plaintiffs have satisfied the first factor. Four Chat Agents state that their hours were tracked by the same time-keeping system in conjuncture with the exception-time policy.[3] Doc. 35, Pls.' Reply, 7–8. Plaintiffs and Chat-Agent Supervisor Martha Dial-Hollingsworth specifically named thirteen present and former Chat Agents who complained of the time-keeping system and exception-time policy utilized by Defendants. Doc. 10, Pls.' Mot. Cond. Cert., 6. Like other district courts in this circuit, the Court finds that Plaintiffs' evidence sufficiently demonstrates that other aggrieved individuals exist. *See, e.g., Clarke v. Convergys*

---

[3] Defendants argue that Jones should not be entitled to continue as Lead Plaintiff because she did not present a statement to support the Conditional Certification Motion, did not appear for her deposition, and has not responded to any discovery requests. Doc. 30, Defs.' Resp., 12; Doc. 39, Defs.' Sur-Reply, 2. Regardless, the fact remains that Jones has not withdrawn from this suit and even without her active participation in the suit, Plaintiffs have still come forth with several other Chat Agents who were subjected to similar compensation policies.

*Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (granting conditional certification when potential class members had the same job, worked on a single floor at a single facility, and were "subjected to the same [allegedly] unlawful practices . . .").

As to the third factor, not only have Plaintiffs shown that there are other aggrieved individuals but they have also shown that these individuals desire to opt-in. This Court and many others in the Fifth Circuit have required the plaintiff to show that other employees desire to opt in. *Clemons v. PHB, Inc.*, 2018 WL 4539116, at *6 (N.D. Tex. Sept. 21, 2018) (Boyle, J.) (citing *Straka v. Methodist Dallas Med. Ctr. Auxiliary*, 2018 WL 1611865, at *3 (N.D. Tex. Apr. 3, 2018) (Boyle, J.)). Other potential plaintiffs' "interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *Id.* As previously stated, two individuals—Taurean Persaud and Kamesha McFail—have already filed their notices of consent to join the named Plaintiffs as parties and Plaintiffs have otherwise identified at least thirteen other Chat Agents by name who have expressed interest in participating in this case. Courts have held that the third factor is satisfied when as few as two individuals have opted-in. *Wedel v. Vaughn Energy Services, LLC*, 2015 WL 5920034, at *1 n.2 (S.D. Tex. Oc. 9, 2015) (compiling cases). Thus, the Court finds that the first and third factors weigh in favor of conditional certification.

The Court focuses the remainder of its analysis on the issue of whether named Plaintiffs and potential opt-in plaintiffs are similarly situated. As to the second factor, a plaintiff "must demonstrate a reasonable basis for believing that a class of similarly situated persons exists." *Hernandez v. Robert Dering Contr., LLC*, 191 F. Supp. 3d 675, 683 (S.D. Tex. 2016). To make this determination, courts consider both similarity in (1) job requirements and (2) pay provisions. *Id.*; *Mason v. Amarillo Plastic*

*Fabricators*, 2015 WL 4481233, at *4 (N.D. Tex. July 22, 2015). The positions of the employees and the named plaintiff need only be similar, not identical. *Valcho*, 574 F. Supp. 2d at 621. Essentially, a sufficient "factual nexus" must exist between the named plaintiff's situation and that of the proposed class members. *Williams v. Grayco Cable Services, Inc.*, 187 F. Supp. 3d 760, 766 (S.D. Tex. 2016).

First, Plaintiffs have demonstrated, and Defendants have not contested, that the proposed class members are similarly situated to the named Plaintiffs with respect to their job requirements. Doc. 10, Pls.' Mot. Cond. Cert., 4–5. Plaintiffs' proposed class consists of hourly-paid Chat Agents employed by Defendants to service Verizon at the Dallas Center. *Id.* at 6. Plaintiffs claim that the "job positions are identical and the circumstances are identical." *Id.* at 10. Without any contrary argument from Defendants, the Court agrees that Plaintiffs and the proposed class members are similarly situated with regard to their job requirements.

Second, with regard to the compensation scheme, "[a] unified plan, policy, or scheme need not be proved at the notice stage; rather, the existence of a plan or policy is probative evidence that similarly situated plaintiffs exist." *McDonald v. Worldpac, Inc.*, 2015 WL 12753533, at *4 (N.D. Tex. Sept. 8, 2015). But "[e]vidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Williams*, 187 F. Supp. 3d at 767. If "there is no single decision, policy, or plan that affects the [p]laintiffs, the case will have enormous manageability problems." *Procter v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 281 (N.D. Tex. 2008) (internal quotation marks omitted).

Plaintiffs assert that other Chat Agents are similarly-situated because they were all subject to the same "illegal stopwatch methodology, without an objective time keeping process." Doc. 10, Pls.' Mot. Cond. Cert., 10. (internal quotations omitted). According to Plaintiffs, each Chat Agent "would

start the day on their computers and perform the same work as each other, and suffer similar time exclusions and reductions due to Etech's illegal stopwatch timekeeping method." *Id.* at 11 (internal quotations omitted). Plaintiffs also argue, in their Reply, that beyond the compensation plan and Defendants' policies of addressing paycheck discrepancies, there is a "coordinated *practice*" among Dallas Center managers "to shave [compensable] time through reducing or denying otherwise compensable exception time." Doc. 35, Pls.' Reply, 3 (internal quotations omitted). Although Defendants claim, in their Sur-Reply, that this is a shift in Plaintiffs' story from their Motion to their Reply Brief, Plaintiffs' allegations of a practice among managers to deny exception-time only emphasizes the alleged lack of consistency and objectivity in tracking, recording, and approving of exception-time. In fact, Testimony from Wilson, Persaud, and Dial-Hollinsworth attached to the initial Motion all support this allegation.[4] Doc.10-4, Wilson Depo., 105:20–108:1–9; Doc. 10-5, Persaud Decl., ¶ 7; Doc. 10-6, Dial-Hollingsworth Decl., ¶ 11.

Further, the Court does not find the fact that the allegedly unaccounted for exception-time

---

[4] Defendants argue that there is already a company procedure in place for disputing pay discrepancies that Plaintiffs in this case did not pursue. Doc. 39, Defs.' Sur-Reply, 5. However, Chat Agents allege that exception-time was only recorded on a dry-erase board that was erased every day, making it more difficult to dispute a claim for unpaid exception-time due to a lack of concrete evidence beyond a day's work. Doc. 35, Pls.' Reply, 5 n.7.
     Further, Plaintiffs cite to major discrepancies between time worked and time recorded, amounting to more than a ten-hour difference in Chat Agents' pay periods at times. Doc. 35, Pls.' Reply, 2, 6 n.4. While the purpose of the exception-time policy is to help Chat Agents account for their time away from the computer and the Payroll Resolution Process is in place to help Chat Agents resolve any pay issues, these systems are allegedly ineffective. Doc. 10-5, Persaud Decl., ¶ 7; Doc. 31-1, Defs.' App., ¶¶ 8, 16. The alleged difference between the hours Chat Agents claim that they worked and the time actually recorded through the time-keeping system and exception-time policies, leads to the inference that the systems are not accurately recording hours worked even with the opportunities for correction. *See* 29 C.F.R. § 785.48 ("Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.").

was a result of different types of job duties or other reasons sufficient to deem them purely personal and not fit for conditional class certification. For example, some Chat Agents said they were not paid fully for time spent talking to a manager and others allege they were shortened time when their computers were down. Despite theses differences, in the end, Plaintiffs allege, and Defendants do not refute, that all Chat Agents' hours were tracked by the same time-keeping system and were subject to the same exception-time policy. Thus, Plaintiffs have provided a reasonable basis to demonstrate that all Chat Agents are subject to the same alleged policy that violates the FLSA.

Defendants further argue that Plaintiffs lack evidence of a unified policy because Persaud and others were potentially denied overtime pay due to the "failure of two of his three supervisors." Doc. 30, Defs.' Resp., 26. Defendants assert that the "rouge conduct of individual supervisors cannot serve as the basis of a collective action." *Id.* at 27 (discussing *Hickson v. United States Postal Serv.*, 2010 WL 3835887 (E.D. Tex. July 22, 2010)). However, *Hickson* is factually distinguishable from the present case. In *Hickson*, the plaintiffs attempted to rely in part on the conduct of managers across a company to certify a large class of roughly 20,000 people, covering offices located within five different states. *Hickson*, 2010 WL 3835887, at *6. Here, Plaintiffs desire to certify a relatively small class of less than a 100 people—all subject to the same timekeeping methods and policies at a single Dallas location. Doc. 10, Pls.' Mot. Cond. Cert., 4–5. Defendants' argument is more persuasive in cases when a plaintiff seeks conditional certification for a large class of individuals at several nationwide locations based on the actions of a subset of rogue managers.[8] As shown above, that is not the case here.

---

[8] *Compare Salinas v. O'Reilly Auto., Inc.*, 2005 WL 3783598, at *9 (N.D. Tex., Nov. 17, 2005) (Boyle, J.) (denying conditional certification when proof of a national policy was only based on conduct of individual managers); *with Rosales v. Equinox Holdings, Inc.*, 2019 WL 1753962, at *5–6 (N.D. Tex. Apr. 19, 2019) (granting conditional certification when there was sufficient evidence that managers followed a unified practice at a single location while denying conditional certification company wide).

In their Sur-Reply, Defendants once again reiterate their argument that Plaintiffs are not similarly situated to the putative class because the allegations and circumstances surrounding their pay involve unique, individual circumstances, and that judicial economy would not be served if the claims were brought together in one action. Doc. 39, Defs.' Sur-Reply, 2. However, the various reasons why employees needed to claim exception-time does not exclude conditional certification of a limited class when the class is manageable in size. In *Clarke*, for example, the district court granted conditional certification to the call-center plaintiffs who worked "(1) in a single job category (2) on a single floor (3) at a single facility . . . (4) who were all hourly, non-exempt employees." *Clarke*, 370 F. Supp. 2d. at 606. In total there were 500 to 800 other employees who were allegedly similarly situated. *Id.* at 604. The plaintiffs in *Clarke* were also all subject to a similar time-keeping system and "performed the same type of pre-and post-shift, off-the-clock tasks." *Id.* at 606. These tasks included, "searching for available workstations, reading daily e-mails from management, booting up their computers, logging into several computer programs, and otherwise preparing to take calls." *Id.* at 603. The court granted conditional certification in *Clarke* despite the defendant's arguments that off-the-clock overtime claims are inherently individualized. *Id.* at 606. This case mirrors the facts of *Clarke*. Here, the same general policies apply to each Chat Agent even though Defendants' compensation scheme incorporates multiple variables. The Court finds that the individual nature of the allegations of each opt-in Plaintiff does not preclude conditional certification because all pay discrepancies concern the same time-keeping system and exception-time policy. Similarly, this case would be judicially manageable due to the limited amount of potential plaintiffs and because plaintiffs all have the same job and all work at a single location. Therefore, the Court finds that Plaintiffs have met their low burden of establishing that they are similarly situated with potential plaintiffs as to their job

requirements and pay provisions.

At this first stage in FLSA class certification, the Court will not consider all of Defendants' arguments and defenses because "it is not appropriate to require [Plaintiffs] to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated." *McKnight*, 756 F. Supp. 2d at 804. Defendants will have an opportunity to assert their defenses at the decertification stage under the higher standard of review.[9] At this stage, Plaintiffs need not fully prove their case to show that the named Plaintiffs and potential opt-in plaintiffs are similarly situated. Thus, the Court finds that Plaintiffs have provided a reasonable basis that the Chat Agents are similarly situated as to their job requirements and pay provisions to warrant conditional certification.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification, Doc. 10, is **GRANTED** as follows:

1. The Court **CONDITIONALLY CERTIFIES** this collective action.

2. The prospective class may include all Verizon Chat Agents, employed by Defendants, who work or worked at the Dallas Center (8700 Stemmons Fwy, 2nd Floor, Dallas, TX, 75247) for the past three years from the date of this Order.

---

[9] For example, Defendants argue that class certification is not appropriate because the individualized nature of the claims would require Defendants to argue varied defenses and would not be judicially manageable. Doc. 30, Defs.' Reply, 29. However, courts in this circuit primarily consider whether defenses are varied during the decertification stage. *See, e.g., Winkler v. Sunbelt Rentals, Inc.*, 2013 WL 12137735, at *5 (N.D. Tex. Apr. 21, 2013) (Boyle, J.) (holding that defendant's separate defenses did not bar conditional class certification).

3. The Court **ORDERS** Defendants to produce the full names and current or last known addresses of all individuals falling within the above-defined class (Employee Information). Defendant shall provide the Employee Information in an electronic form that can be used by Plaintiff in mailing out the notice. If the information is not stored electronically, Defendant shall provide it in written form. Noticing the prospective class by posting at the job site, e-mailing, or text messaging is not allowed.

4. The Court **ORDERS** Defendants to produce the Employee Information no later than **14 days from the date of this Order—*i.e.*, June 27, 2019.** If Defendant fails to provide the Employee Information by that date, the statute of limitations will be equitably tolled for each day after June 27, 2019, that Defendant fails to provide the Employee Information.

5. The Court further **ORDERS** the parties to confer and submit an agreed Proposed Notice form and an agreed Proposed Consent to Join form no later than **14 days from the date of this Order—*i.e.*, June 27, 2019.**

6. The opt-in period will last until **60 days** following the date Defendant produces the Employee Information.

**SO ORDERED.**

**SIGNED: June 13, 2019**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE